<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

LUIS DASTAS,                          :
                                      :      Civil Action No. 11-4062 (FLW)
            Plaintiff,                :
                                      :
      v.                              :      **OPINION**
                                      :
YOLETTE C . ROSS, et al.,             :
                                      :
            Defendants.               :

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Luis Dastas
Middlesex County Adult Correctional Center
New Brunswick, NJ 08903

**WOLFSON**, District Judge

      Plaintiff Luis Dastas, a prisoner, seeks to bring this

action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 42 U.S.C. § 1983, alleging

violations of his constitutional rights.  Based on his affidavit

of indigence and the absence of three qualifying dismissals

within 28 U.S.C. §1915(g), the Court will grant Plaintiff's

application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C.

§ 1915(a) and order the Clerk of the Court to file the

Complaint.[1]

---

      [1] The Court notes that Plaintiff already had incurred two
"strikes" for purposes of the "three-strikes" provision of 28
U.S.C. § 1915(g).  <u>See</u> <u>Dastas v. Cicchi</u>, 11-1473 (D.N.J.); <u>Dastas
v. Dept. of Corrections</u>, 01-0598 (D.N.J.).

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that he is currently serving a sentence of Community Supervision for Life ("CSL").  Plaintiff does not describe the underlying conviction or the conditions of supervision imposed upon his release from prison, nor has this Court located any relevant court records.[2]

Plaintiff alleges that two Chairmen of the New Jersey State Parole Board, Yolette C. Ross and James T. Plousis, failed to hold hearings and failed to ensure that employees of the New

---

[2] Although this Court has no information regarding the conviction that resulted in the sentence of Community Supervision for Life, or the conditions of supervision, the Court notes that the New Jersey Department of Corrections Inmate Locator reflects that Plaintiff is presently confined at South Woods State Prison pursuant to August 2011 convictions for violation of the conditions of Community Supervision for Life, N.J.S.A. 2C:43-6.4(d)(4), reported to have occurred on August 7, 2010, and for terroristic threats, N.J.S.A. 2C:12-3(a)(3), reported to have occurred on May 14, 2009.  The report in the Inmate Locator does not describe the nature of the violation of conditions of Community Supervision for Life.

Jersey State Parole Board held hearings before modifying his conditions of supervision, as described below.

Plaintiff alleges that District Parole Supervisor James Rauth and District Parole Supervisor John Malak failed to hold a hearing before amending his conditions of supervision, on September 20, 2007, to include a no-contact special condition.[3] Plaintiff does not more fully describe the no-contact special condition.

Plaintiff alleges that District Parole Supervisor Lt. Edward Russo and District Parole Supervisor Cavanaugh failed to hold a hearing before amending his conditions of supervision, on August 25, 2009, to include a no-alcohol special condition.

---

[3] Generally, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiff's claims. See Wilson v. Garcia, 471 U.S. 261, 280 (1985); Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989). A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint. See, e.g., Jones v. Bock, 549 U.S. 199, 214-15 (2007) (if the allegations of a complaint, "for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim").

This Complaint is dated July 11, 2011. Accordingly, the claim for damages based upon the 2007 amendment to the conditions of supervision is time-barred and dismissible on that ground.

Plaintiff alleges that District Parole Supervisor Lt. Edward Jackson failed to hold a hearing before amending his conditions of supervision, on March 4, 2010, to include use of a GPS monitoring device.

In addition to the Defendants described above, Plaintiff also names as a Defendant the New Jersey State Parole Board.[4]

---

[4] The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332 (1979).

Title 28 Sections 1915(e)(2)(B)(iii) and 1915A(b)(2) require this Court to dismiss this action if it "seeks monetary relief from a defendant who is immune from such relief."

In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983).

For the foregoing reasons, all damages claims against the

Plaintiff seeks monetary damages for what he alleges were violations of his due process rights.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

―――――――――――――――――

New Jersey State Parole Board and against the individual
defendants in their official capacities will be dismissed without
prejudice for lack of jurisdiction.

5

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).  The <u>Twombly</u> pleading standard applies in civil rights actions.  <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008).

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, ... we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  Put another way, in light of <u>Twombly</u>, Rule

6

8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d

7

at 234-35.  As the Supreme Court instructed in Iqbal,
"[w]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct,
the complaint has alleged-but it has not
'show[n]'-'that the pleader is entitled to relief.'"
This "plausibility" determination will be "a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34

(1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane

v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg

County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State
or Territory ... subjects, or causes to be subjected,
any citizen of the United States or other person within
the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other
proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286,

1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

The claims against Yolette C. Ross and James T. Plousis appear to be based solely on an untenable theory of vicarious liability and will be dismissed for failure to state a claim.

IV.   ANALYSIS

A.   The Due Process Claim

Plaintiff asserts that the various defendants have violated his right to due process, by amending his conditions of Community Supervision for Life without an advance hearing.  Plaintiff has not described the nature of the underlying conviction or the conditions to which he was subject prior to the amendments.  The challenged amendments include a no-alcohol provision and a GPS monitoring condition.[5]

Pursuant to N.J.S.A. 2C:43-6.4(a), with respect to certain enumerated offenses, New Jersey courts must impose a special sentence of Community Supervision for Life.  An offender serving a CSL sentence shall be supervised by the Division of Parole as if on parole, subject to certain general conditions, and subject to any special conditions established by the appropriate panel of the New Jersey State Parole Board.  N.J.A.C. 10A:71-6.11.  A certificate detailing the conditions of CSL supervision is

---

[5] As noted above, the 2007 no-contact condition is time-barred.  In any event, however, this analysis would apply to that claim as well.

delivered to the offender at the time of his release from custody at the expiration of a term of incarceration or upon expiration of a term of probation or parole.  N.J.A.C. 10A:71-6.11(g)-(j). Thereafter,

> Additional special conditions may be imposed by the District Parole Supervisor, an Assistant District Parole Supervisor or the designated representative of the District Parole Supervisor when it is the opinion that such conditions would reduce the likelihood of recurrence of criminal behavior.  The offender and the Board shall be given written notice upon the imposition of such conditions.

> 1.   Upon notice being received by the Board, the appropriate Board panel shall review the offender's case and determine whether to vacate, modify or affirm the additional special condition(s).

> 2.   The Board panel shall notify the District Parole Supervisor of its determination within three working days of receipt of notice of the imposition of the additional special condition(s).

> 3.   The District Parole Supervisor shall notify the offender in writing of the determination othe Board panel and shall cause a written record of such notice to be made in the offender's case file.

> 4.   A special condition shall not be deemed effective until affirmed by the appropriate Board panel.

N.J.A.C. 10A:71-6.11(k).  An offender who violates a condition of a special sentence of community supervision without good cause is guilty of a crime of the fourth degree.  N.J.S.A. 2C:43-6.4(d); N.J.A.C. 10A:71-6.11(l).

The United States Supreme Court has established certain minimal procedural protections prior to <u>revocation</u> of parole or

11

probation, including a hearing, see Morrissey v. Brewer, 408 U.S. 471 (1972); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973), but has not considered whether such procedures apply to modifications of the conditions of supervision for persons on probation or parole.

As an initial matter, Plaintiff must establish a liberty interest entitled to protection by the Due Process Clause.  Here, those would be interests in drinking alcohol and in moving freely without GPS monitoring.  Thereafter, requirements of due process are flexible and context-specific.

> [I]dentification of the specific dictates of due
> process generally requires consideration of three
> distinct factors: First, the private interest that will
> be affected by the official action; second, the risk of
> an erroneous deprivation of such interest through the
> procedures used, and the probable value, if any, of
> additional or substitute procedural safeguards; and
> finally, the Government's interest, including the
> function involved and the fiscal and administrative
> burdens that the additional or substitute procedural
> requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Applying this standard, courts have reached varying conclusions regarding the procedures required before, or after, changes to conditions of supervision, depending upon the specific circumstances.  Cf., e.g., Skipworth v. United States, 508 F.2d 598 (3d Cir. 1975) (due process does not require a hearing before extension of a term of probation; however, as a matter of Court's supervisory authority, and because of potential for prejudice,

12

District Courts in Third Circuit were thereafter required to provide notice and advise federal probationer of his right to a hearing with assistance of counsel); <u>Meza v. Livingston</u>, 607 F.3d 392 (5th Cir. 2010) (where offender was never convicted of a sex crime, before sex-offender conditions can be imposed on him, he is entitled to notice, an evidentiary hearing before an impartial decisionmaker, and the right to confront and cross-examine witnesses, unless good cause is shown); <u>Jamgochian v. New Jersey State Parole Board</u>, 196 N.J. 222 (N.J. 2008) (sex offender who has been successfully supervised in society for three and one-half years is entitled to "reasonable notice and an opportunity to be heard," which may consist of a response by letter and/or affidavit, within a reasonably brief period of time after imposition of an 11-hour per day curfew from 8:00 p.m. to 7:00 a.m.; to merit a hearing, the supervised offender must deny the allegations or contest the conclusions to be drawn from the allegations or the rationale supporting the curfew); <u>Dordell v. State of Delaware</u>, 850 S.2d 302, 2004 WL 1277160 (Del. Supr. 2004) (post-deprivation judicial review of amended condition prohibiting contact with minors is sufficient to satisfy due process); <u>State v. Smith</u>, 769 A.2d 698 (Conn. 2001) (due process does not require notice and a hearing with benefit of counsel prior to an order modifying terms of sex offender's probation to

13

include therapy) (collecting cases finding no pre-amendment hearing required).

Here, Plaintiff has alleged only that the conditions of his supervision were amended, without a hearing, to include GPS monitoring and a no-alcohol provision.  To raise Plaintiff's due process claim above the "speculative level," however, Plaintiff must provide the Court with at least some rudimentary factual information that would permit it to apply the <u>Mathews</u> factors to his circumstances.  Such information would include, for instance, the nature of the conviction that led to the CSL sentence, the date of Plaintiff's release from confinement, the progress of his supervision after release from confinement, the reason for the imposition of the new conditions, the circumstances under which he was notified of the new conditions, any post-deprivation remedies available to him and his utilization of those remedies,[6] etc.  In the absence of a factual context, the fact of changed conditions of supervision, alone, does not state a claim for violation of due process rights.  The Complaint will be dismissed.

B.    <u>Considerations Regarding the Bar of Preiser/Heck</u>

The fact that Plaintiff appears presently to be confined pursuant to a conviction for violation of the conditions of

---

[6] The Court notes that New Jersey prisoners generally have a right to judicial review of decisions of the New Jersey State Parole Board.  <u>See</u> N.J. Court Rule 2:2-3(a)(2).

14

supervision raises one additional concern.  To the extent
Plaintiff is presently confined based upon a violation of one of
the challenged amended conditions of supervision, his claim may
be premature until such time as the conviction for violation of
the conditions is overturned or set aside by habeas.

In a series of cases beginning with Preiser v. Rodriquez,
411 U.S. 475 (1973), the Supreme Court has analyzed the
intersection of 42 U.S.C.§ 1983 and the federal habeas corpus
statute, 28 U.S.C. § 2254.  In Preiser, state prisoners who had
been deprived of good-conduct-time credits by the New York State
Department of Correctional Services as a result of disciplinary
proceedings brought a § 1983 action seeking injunctive relief to
compel restoration of the credits, which would have resulted in
their immediate release.  411 U.S. at 476.  The prisoners did not
seek compensatory damages for the loss of their credits.  411
U.S. at 494.  The Court held that "when a state prisoner is
challenging the very fact or duration of his physical
imprisonment, and the relief he seeks is a determination that he
is entitled to immediate release or a speedier release from that
imprisonment, his sole federal remedy is a writ of habeas
corpus." Id. at 500.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Court
addressed a corollary question to that presented in Preiser,
whether a prisoner could challenge the constitutionality of his

15

conviction in a suit for damages only under § 1983, a form of
relief not available through a habeas corpus proceeding.  Again,
the Court rejected § 1983 as a vehicle to challenge the
lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for
> other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or sentence
> has been reversed on direct appeal, expunged by
> executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into
> question by a federal court's issuance of a writ of
> habeas corpus, 28 U.S.C. § 2254.  A claim for damages
> bearing that relationship to a conviction or sentence
> that has not been so invalidated is not cognizable
> under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further
instructed district courts, in determining whether a complaint
states a claim under § 1983, to evaluate whether a favorable
outcome would necessarily imply the invalidity of a criminal
judgment.

> Thus, when a state prisoner seeks damages in a § 1983
> suit, the district court must consider whether a
> judgment in favor of the plaintiff would necessarily
> imply the invalidity of his conviction or sentence; if
> it would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or
> sentence has already been invalidated.  But if the
> district court determines that the plaintiff's action,
> even if successful, will not demonstrate the invalidity
> of any outstanding criminal judgment against the
> plaintiff, the action should be allowed to proceed, in
> the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).  The Court further held that
"a § 1983 cause of action for damages attributable to an

16

unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Id. at 489-90.

In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court applied the lessons of Preiser and Heck to a state prisoner action, seeking compensatory and punitive damages, challenging the constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of good-time credits, but not necessarily challenging the result and not seeking the restoration of the good-time credits.  Again, the Court emphasized that such a claim is not cognizable under § 1983 if a favorable outcome would necessarily imply the invalidity of the challenged judgment, there the disciplinary finding and punishment.  520 U.S. at 646-8.

Most recently, in Wilkinson v. Dotson, 544 U.S. 74 (2005), the Supreme Court applied these principles to hold that claims challenging the validity of general parole procedures are cognizable under § 1983, so long as the prisoner does not seek injunctive relief ordering his immediate or speedier release into the community, but rather seeks merely a new eligibility review or parole hearing.

Here, Plaintiff asserts that certain conditions of supervision were imposed on him in violation of his due process rights.  He seeks only compensatory damages.  Nevertheless, if Plaintiff is presently confined pursuant to a conviction for

17

violation for one of the challenged conditions, this Court must
determine whether the Heck/Preiser line of cases would bar this
case at this time.  Accordingly, in any proposed amended
complaint, Plaintiff must state the facts surrounding his
conviction for violation of the conditions of supervision.

V.   CONCLUSION

For the reasons set forth above, all claims will be
dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and
1915A(b)(1), for failure to state a claim.[7]

However, because it is conceivable that Plaintiff may be
able to supplement his pleading with facts sufficient to overcome
certain deficiencies described herein, the Court will grant
Plaintiff leave to move to reopen and to file an amended
complaint.[8]

_____

[7] The Court notes that "'[g]enerally, an order which
dismisses a complaint without prejudice is neither final nor
appealable because the deficiency may be corrected by the
plaintiff without affecting the cause of action.' ...  The
dispositive inquiry is whether the district court's order finally
resolved the case." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d
Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951
(3d Cir. 1976)) (other citations omitted).  In this case, if
Plaintiff can correct the deficiencies of his Complaint, he may
file a motion to re-open these claims in accordance with the
court rules.

[8] Plaintiff should note that when an amended complaint is
filed, the original complaint no longer performs any function in
the case and "cannot be utilized to cure defects in the amended
[complaint], unless the relevant portion is specifically
incorporated in the new [complaint]."  6 Wright, Miller & Kane,
Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes
omitted).  An amended complaint may adopt some or all of the

An appropriate order follows.

s/Freda L. Wolfson
Freda L. Wolfson
United States District Judge

Dated: February 29, 2012

---

allegations in the original complaint, but the identification of
the particular allegations to be adopted must be clear and
explicit.  Id.  To avoid confusion, the safer course is to file
an amended complaint that is complete in itself.  Id.

19